# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD SHARIF, | ) |
| Plaintiff/Appellant, | ) |
| v. | ) 21 C 1330 |
| HORACE FOX, JR., et al., | ) |
| Defendants/Appellees. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Richard Sharif, representing himself, appeals a bankruptcy judge's order dismissing his amended adversarial complaint ("amended complaint") as to Defendant Arthur Newman in Bankruptcy Adversary Case No. 20-A-00399. For the following reasons, the Court affirms the bankruptcy court's order.

## BACKGROUND

Sharif is the debtor in the bankruptcy proceeding, Case No. 09-05868, which has been pending in the United States Bankruptcy Court for the Northern District of Illinois since February 2009. The bankruptcy court appointed Horace Fox, Jr. as trustee of Sharif's bankruptcy estate, and Fox retained Bruce de'Medici and Bradley Block as his counsel. Arthur Newman is the court-appointed child representative in the ongoing litigation between Luma Hambaroush-Sharif ("Luma"), Sharif's estranged wife, and

Sharif in the Domestic Relations Division of the Circuit Court of Cook County. Jonathan Anderson is Luma's attorney in that litigation.

The amended complaint generally alleges that Defendants "conspired" to "fraudulently" seize assets belonging to the Soad Wattar Revocable Living Trust ("Soad Wattar Trust") and transfer them to Sharif's bankruptcy estate, including life insurance proceeds and real property. More specifically, Sharif alleges that in 1992, he was appointed trustee of the Soad Wattar Trust. Sharif claims that the home located at 36 Revere Drive in South Barrington, Illinois (the "South Barrington Property") is an asset of the Soad Wattar Trust. On July 23, 2007, Sharif's mother, Soad Wattar, revoked Sharif's appointment as trustee and named Sharif's sister as the trustee. Sharif alleges that upon Wattar's death in March 2010, Defendants fraudulently seized $600,000 of exempt life insurance proceeds. Sharif claims Fox and his counsel knew or should have known that the insurance proceeds were not a part of the bankruptcy estate.

On July 14, 2016, Luma filed for divorce in the Circuit Court of Cook County, alleging that the Soad Wattar Trust and other properties, including the South Barrington Property, were marital property. That domestic relations case remains pending. Sharif alleges Fox, de'Medici, and Block conspired with Luma to allow her to stay in the South Barrington Property in exchange for false testimony in a remand hearing. According to Sharif, Luma should have been paying the bankruptcy estate rent and, in furtherance of the conspiracy, Fox allowed Luma to stay in the house even though she was not a creditor and the house was not a marital asset. Sharif claims Fox and his attorneys

2

negligently and intentionally failed to inspect the South Barrington Property until August 2010.[1]

Sharif alleges that Newman sought payment of fees for representing the children as the court-appointed child's representative in the domestic relations litigation from funds in Sharif's bankruptcy estate. Sharif further alleges that Newman "conspired" with Fox, de'Medici, and Block to cause assets of the Soad Wattar Trust to be removed from the trust and transferred to Sharif's bankruptcy estate, and that those assets were being sought from the bankruptcy estate as attorney's fees in the domestic relations litigation.

Based on the above, Sharif's amended complaint raises a claim under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I), as well as negligence (Count III) and conspiracy (Count IV) claims against all Defendants. Sharif also brings a claim for breach of fiduciary duty (Count II) against Fox, de'Medici, and Block.

Sharif's RICO claim incorporates the general allegations recounted above and further alleges that Defendants used the bankruptcy court proceeding as well as the domestic relations proceeding as an enterprise "to withdraw funds illegally" from the Soad Wattar Trust and South Barrington Property.

---

[1] Sharif specifically alleges Defendants failed to inspect the property "for ten (10) years after the filing of bankruptcy, or until August 2010." Am. Compl., ¶ 28. However, since the bankruptcy case was initiated in 2009, this assertion cannot be true.

In his breach of fiduciary duty claim, Sharif alleges Fox, de'Medici, and Block breached their fiduciary duty owed to Sharif based on the conduct set forth above.

Sharif's negligence claim restates the general background allegations above and also alleges that Newman, Fox, and Fox's attorneys "failed to investigate or research" and engaged in "intentional acts of deception and misrepresentation to the courts" in violation of Illinois law, including filing pleadings seeking to recover attorney's fees from the aforementioned trust. Sharif does not specify how he was damaged as a result of the alleged negligence.

Sharif's conspiracy claim again merely incorporates the allegations of paragraphs 1-30 of the amended complaint and further alleges only that (a) "[t]he Defendants at various times as mentioned above, entered into an agreement to cooperate with each other in an effort to wrongfully obtain money that belongs to [Sharif's] family"; (b) "Defendants acted on their agreement by their abovementioned conduct"; and (c) as a result, Sharif was damaged.

Newman moved to dismiss the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), arguing the claims were subject to the domestic-relations exception to federal jurisdiction; Newman was absolutely immune from suit for his conduct as the court-appointed child's representative in the underlying domestic relations case; and the amended complaint failed to state a cognizable cause of action against Newman. The bankruptcy court granted Newman's motion to dismiss, dismissing all claims against Newman with prejudice and ordering Sharif to show cause

why he should not be sanctioned for violating Bankruptcy Rule 9011(b)(1-3). The bankruptcy court's order granting the motion to dismiss is the subject of this appeal.[2]

## LEGAL STANDARD

On appeal from the bankruptcy court, the district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Muhammad v. Bank of Am.*, 2016 WL 4720044, at *2 (N.D. Ill. 2016) (cleaned up). When a party appeals a bankruptcy court's order, the bankruptcy court's conclusions of law are reviewed under a *de novo* standard and its findings of fact are reviewed for clear error. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). Therefore, this Court reviews *de novo* the dismissal of the amended complaint. *See N.W. Tissue Ctr. v. Shalala*, 1 F.3d 522, 527 (7th Cir. 1993).

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. In analyzing such a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted). The burden

---

[2] Additional motions to dismiss the amended complaint filed by de'Medici and Block, Fox, Anderson, and Luma were subsequently granted with prejudice because "Sharif's amended complaint is legally insufficient, devoid of grounds for recovery under all theories asserted." The bankruptcy court also granted Newman's motion for sanctions and imposed additional sanctions under Bankruptcy Rule 9011. The sanctions and dismissal order is the subject of the appeal in Case No. 21 C 3500.

5

of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Finally, plaintiffs alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b). When, as here, "predicate acts of racketeering involve fraud, the complaint must describe the 'who, what, when, where, and how' of the fraudulent activity to meet the heightened pleading standard demanded by Rule 9(b)." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (quoting *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019)). When bringing RICO claims against multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## DISCUSSION

### I. The Domestic Relations Exception to Federal Jurisdiction

The domestic relations exception "denies federal jurisdiction to grant a divorce or exercise the other characteristic powers of a domestic-relations court." *Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006). The domestic relations exception to federal jurisdiction recognizes that state courts "have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues." *Dillon v. Alan H. Shifrin & Assocs., LLC*, 2017 WL 2480706, at *3 (N.D. Ill. 2017) (citations omitted). In *Friedlander v. Friedlander*, the Seventh Circuit held that the exception divests jurisdiction not only from cases implicating "distinctive forms of relief" such as the granting of a divorce or an annulment, an award of child custody, a decree of alimony

7

or child support, but also from a "penumbra" of cases implicating "ancillary proceedings . . . that state law would require be litigated as a tail to the original domestic relations proceeding." 149 F.3d 739, 740 (7th Cir. 1998).

All of Sharif's claims against Newman cite his role as the court-appointed child representative. This Court, like the bankruptcy court, finds that because Newman's conduct as a child representative is so intertwined with the issues in the domestic relations litigation, federal jurisdiction is lacking over his actions therein.

## II. Immunity from Suit as Court-Appointed Child Representative

Even if the domestic relations exception to federal jurisdiction did not apply to Sharif's claims against Newman, dismissal is nevertheless appropriate based on Newman's immunity from suit. Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction. *Jones v. Brennan,* 465 F.3d 304, 308 (7th Cir. 2006). "This principle is applicable to a child's representative." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009); *see also Vlastelica v. Brend*, 2011 IL App (1st) 102587, ¶¶ 21–23 (noting that *Cooney* held that guardians ad litem and child representatives are entitled to the same absolute immunity because they are "arms of the court," finding *Cooney*'s logic persuasive, and holding that child representatives, like guardians ad litem, are entitled to absolute immunity).

The Court disagrees with Sharif's characterization of Newman's conduct as occurring outside his role as child representative. Newman committed all of the

8

complained of conduct after his appointment as a child representative. In other words, "[a]ll of the alleged misfeasance and malfeasance committed by [Newman] occurred within the course of his court-appointed duties and are subject to absolute immunity." *Vlastelica*, 2011 IL App (1st) 102587, ¶ 29.

In *Golden v. Helen Sigman & Associates, Ltd.*, the plaintiff alleged that the defendant, a court-appointed child representative, made false and misleading communications with the parties about matters related to a custody dispute. 611 F.3d 356, 361 (7th Cir.2010). The Seventh Circuit held that even assuming the truth of these allegations, the defendant still was carrying out her responsibilities as child representative by speaking with the relevant actors about the custody proceedings and investigating the facts. *Id.* In this capacity, the defendant's actions closely resembled those of a guardian ad litem who was acting as an arm of the court and, as such, she was immune. *Id.*

And in *Cooney*, the plaintiff alleged that the defendants, a court-appointed child representative and a psychiatrist, were part of an illegal conspiracy to deprive her of the custody of her children. 538 F.3d at 970. The Seventh Circuit concluded the acts complained of, including that the psychiatrist submitted a false report that the child suffered from Munchausen syndrome, "all occurred within the course of their court-appointed duties." *Id.*

The Court agrees with Sharif that the immunity afforded to child representatives is not unlimited; however, the amended complaint includes no allegations from which

9

the Court could reasonably infer that any of Newman's conduct was outside the scope of his authority or responsibilities as a court-appointed child representative.

### III. Dismissal under Rule 12(b)(6)

Dismissal of Sharif's claims against Newman is also warranted under Rule 12(b)(6) for failure to state a claim. We address each count against Newman in turn.

#### A. RICO: Count I

To state a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001). "A 'pattern' of racketeering activity consists of at least two predicate acts of racketeering (e.g., extortion, mail fraud) within ten years." *Nowicki v. Delao*, 506 F. App'x 514, 516 (7th Cir. 2013). The predicate acts of racketeering activity must be related and continuous. *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017). Additionally, a plaintiff who claims to have been injured by reason of a RICO predicate offense has to show that the offense not only was a "but for" cause of his injury, but the proximate cause as well. *Hemi Gr., LLC v. City of New York*, 559 U.S. 1, 2–3 (2010).

RICO's definition of enterprise "has a wide reach." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009). And "the very concept of an association in fact is expansive." *Id.* "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. "The enterprise

10

also must have 'a structure and goals separate from the predicate acts themselves.'" *Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, 2022 WL 142404, at *10 (N.D. Ill. 2022) (quoting *U.S. v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)).

Despite the expansive nature of the definition, it is not limitless. *United Food and Comm. Workers Unions and Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). For example, "an employer and its employees cannot constitute a RICO enterprise." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997). And because "you cannot associate with yourself," *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985), a RICO plaintiff must "identify a 'person'—*i.e.,* the defendant—that is distinct from the RICO enterprise" and allege that person "conducted or participated in the conduct of the '*enterprise's* affairs' not just [its] own affairs," *Walgreen*, 719 F.3d at 853–54 (emphasis and alterations in original).

Sharif claims the "enterprise" here is the bankruptcy court and the divorce court but does not describe what makes the two courts an enterprise for RICO purposes. Furthermore, the amended complaint is rife with conclusory allegations that do not satisfy Rule 9(b)'s heightened pleading requirements. These conclusions do not state with any specificity what each Defendant did, when they did it, or how their conduct satisfies the RICO predicate act and causation requirements, not to mention the requirement that there be at least two predicate acts that are related and continuous. In other words, the amended complaint leaves the Court with too many unanswered questions. What are the two predicate offenses? How were they the "but for" and

11

"proximate cause" of Sharif's alleged injuries? What specifically did each Defendant do? How are the two courts an enterprise? Sharif's conclusory allegations doom his RICO claim.

Sharif's primary argument against dismissal of his RICO claim (and all of his other claims, for that matter) is that the complained of conduct occurred outside the scope of Defendants' duties and outside of the ongoing litigation. But the amended complaint is devoid of allegations that would permit such an inference.

### B. Negligence: Count III

To state a claim against Newman for negligence, Sharif would have to plead the existence of a duty owed to him by Newman. He cannot do so. Newman is not Sharif's attorney; he is the court-appointed child representative in the domestic relations litigation. Thus, there is no attorney-client relationship (or any type of relationship, for that matter) that would give rise to a duty owed by Newman to Sharif. In the absence of such a duty, Sharif's negligence claim fails as a matter of law.

### C. Conspiracy: Count IV

Sharif alleges Defendants entered into an agreement to cooperate with each other in an effort to wrongfully obtain money that belongs to Sharif's family. Under Illinois law, "[c]ivil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (quotation marks omitted); *see also Indep. Tr. Corp. v. Stewart Info.*

*Servs. Corp.*, 665 F.3d 930, 938–39 (7th Cir. 2012) (same). To state a civil conspiracy claim, "a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure*, 188 Ill. 2d at 133; *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (same). Simply stating Defendants conspired with each other, without more, does not make it so. Furthermore, "a conspiracy is not an independent tort. Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Because Sharif has not adequately alleged any claims against Newman, Newman cannot be held liable for civil conspiracy under Illinois law.

## **CONCLUSION**

For the foregoing reasons, the decision of the bankruptcy court dismissing Sharif's amended adversary complaint with prejudice as to Defendant Newman is affirmed. The Clerk is directed to enter judgment affirming the decision of the bankruptcy court. Civil case terminated. It is so ordered.

Dated: October 11, 2022

_____
Charles P. Kocoras
United States District Judge